If it pleases the court, Your Honor. You're going to talk about both at the same time? Certainly, Your Honor. Whatever the court wants me to do. What? Whatever the court would like me to do, that would be fine. How much time do you need? Probably no more than 15 minutes, Your Honor. 15 minutes on both? On both. I'll try to make it as short as possible. Frank, on behalf of Patel v. City of Los Angeles and on the Patel v. City of Long Beach, and they are distinct plaintiffs, no relation other than the relation on the issue. There are lots of Patels in the world. Too many. Many of them. I think this presents an issue of first impression to the circuit on whether there is a required records exception to the Fourth Amendment under administrative searches. And there seems to be a circuit split on the issue. There is one state case that I cited, the Dela Cruz v. Quackenbush case that came out of the Second District Court of Appeal, Division 7, where Judge Johnson rejected the idea that there was a required records exception in a burger scheme, an administrative search scheme, regulatory scheme. There is a split among the circuits that I found. We couldn't find it at the lower court level. I just by chance happened to find it in a footnote in a Supreme Court case, a California Supreme Court case. But there seems to be a circuit split. It originates out of the requirement to keep OSHA records. And the Eleventh and Sixth Circuits in the Brock v. Emerson case and McLaughlin v. Kings County case holds there is no required records exception. The Fourth Circuit holds otherwise in McLaughlin v. A.B. Chan's case. You're so deeply into this case that you've led us into a jargon-laid label, required records. What do you mean? Do you mean to say that where there are required records, there is no Fourth Amendment protection? No. What do you mean to say by required records? The required records exception that I'm arguing. Exception to what? Exception to the Fourth Amendment requirement of a warrant or a consent. That's what you mean by required records? That's what I mean, Your Honor. And I take that. Does that have anything to do with regulated industries? With what? Regulated industry is the idea. Yes, it is. Well, all right. Now, go step by step. Okay. The Berger case, Berger v. New York, which is the, I think, the central case dealing with closely regulated businesses which then have diminished expectations of privacy under the Fourth Amendment, arises out of the special needs doctrine. The U.S. Supreme Court has said that in certain cases where the government has non-law enforcement purposes and they have special needs to enforce non-law enforcement purposes, there can be an exception to the Fourth Amendment requirement of having a warrant or consent. But what Berger says is that even if you have a diminished expectation of privacy under the Fourth Amendment, it doesn't eviscerate all expectation of privacy. You may not have the full expectation of privacy that a normal citizen has in your business because the government closely regulates it, but the government still has to go through certain steps that gives you notice. It has to be a closely regulated business. It has to further a substantial governmental interest. And then the face of the ordinance has to give you notice of when the government and how the government is going to enforce it. And here the judge found that this was not a closely regulated business. There wasn't sufficient evidence to make that finding. That's correct. But still found that there was no reasonable expectation of privacy, certainly by the motel owners. Correct. And the claim is it's based on the motel clients who are not parties in this case. No, I don't think, and I respectfully beg to differ with Your Honor, I don't think that was an issue. The clients, the guests, have no expectation of privacy under this circuit's case law. We can see that. It's clear under the Cormier case that whoever doesn't have possession of the records, the guest comes, you go to a hotel, you fill out a registration card, you don't have a right to raise that issue. But the motel owner or operator who does have possession of the cards, clearly that's the issue, whether the possession of the cards, using those cards. So what is the motel owner's interest in privacy of somebody else's information? That information is not used simply because somebody fills out the card. That information is also used for other purposes. Well, it can be, but is there any actual proof that, in fact, the registration cards are what motels depend upon for their tax records and the other justifications you offered? Absolutely. On the face of LAMC 4149, it makes specific reference in the same section dealing with inspection by the police department that those records must be kept, doesn't eviscerate any obligation to keep records for tax purposes. It's transferred off to the tax. And Judge Fisher herself made a finding. I was completely lost by what you just said. I missed it. Perhaps maybe I should point to the record for your honor. In Judge Fisher, both in the ordinance at 41 of the excerpts of record, at section three, maintenance of hotel records, which is the issue here, at subsection D, it says nothing in this section absolves the operator from maintaining the record for longer than 90 days in order to comply with any other provision of law, including the obligation to maintain and produce records for the purpose of paying the transient occupancy tax. Well, that's not something that the motel owner is using for his purposes. The point of this is that we can require you to produce tax information, too. Well, that seems to me an identical kind of requirement, something the tax authorities impose. These records are being kept prior to the government telling you to keep them. These records are kept anyway. The motel owner requires, I mean, everybody needs common knowledge. You go to a hotel, you have to have a registration card. Those records are kept for purposes of compiling your taxes. No, no, that speaks to the interest in privacy. What is the interest in privacy, which is what my question is really about? What is the motel's interest? I mean, lots of records are kept about information that's not private. Well, I think if I'm not mistaken, the McLaughlin v. Kings County case, and also the Brock case, said at the very least, when it's for law enforcement purposes, there's an interest in privacy from making sure that if the government wants to enforce it and criminally prosecute someone, that it would not be subject to just arbitrary governmental discretion in terms of enforcing the ordinance. I didn't understand anything you said there, and I don't understand how it relates to privacy of the motel owner. This isn't the motel owner's personal information. It's the registered guest's personal information. What's the motel's owner interest in that? Once the owner takes and has possession of that, it is no longer just the guest's information. That's information that implicates now the owner in terms of being able to show the government that they are complying with the ordinance. It's used for other purposes, as I said.  If somebody gets sued. What makes it private? We're talking about interest in privacy. Privacy in the sense that that information, I think the Dela Cruz case says very clearly, that these records, or the type of records that business owners keep, are something they keep anyway in the course of their business. And just because the government now tells you that you're required to keep those records, doesn't mean that that somehow eviscerates your right to... You're missing my question. I'm not trying to argue or suggest by the question that there is a valid argument that says the government can say you must keep this, therefore we can get it. Right. I'm saying something else. Before you get to a Fourth Amendment claim, you have to start with a reasonable expectation of privacy. Now what privacy interest does the motel owner have in who the registered guests are? And once again, forgive me, Your Honor, but as I was trying to point out, Dela Cruz answers that question. The Dela Cruz case says that these records, because of the fact that they can be used for purposes other than just providing to the government to show you that you're complying with the ordinance, can be used for tax records, can be used in a business lawsuit, can be used for other purposes, that implicates an interest of privacy. Well, it could also be used to show that you're renting rooms to undesirable individuals, and maybe it could be used to declare your property a nuisance.  And that, in fact, is what happened in the second hotel case, where that is just the issue, the factual scenario, where the issue is whether, in fact, they are operating as a nuisance. And there's no problem getting a search warrant if they're exigent circumstances, and of course the exception applies. And you can always get a telephonic warrant. And so what's being at the bottom of this is sort of a disrespect for the Fourth Amendment. Correct. I do want to indicate one thing to Judge Clifton. Even assuming arguendo, Your Honor, that there is no privacy interest, the Fourth Amendment, I think I pointed out in my brief, and it's never been answered, and I think Judge Fischer, who's a great judge, but I think perhaps if I might be bold enough to say there was a category mistake, indicated that just because they have possession of the records, it doesn't raise itself to a level of reasonable expectation of privacy. The Sodal v. Cook County case, which is a 1994 case, I think authored by Justice Rehnquist, late Justice Rehnquist, indicated there's a second prong to the Fourth Amendment, and that is solely based on possession of property. You do not necessarily have to have an expectation of privacy in property for purposes of requiring a warrant, some kind of a warrant or some kind of a court order, for the government to seize it. Sodal is very clear on that, and that has nothing to do, and if Your Honors will look at that Sodal case, the Sodal case says there's a second prong to the Fourth Amendment, the seizure clause, and the seizure clause is not necessarily based on an expectation of privacy. That was never answered by Judge Fischer. What Judge Fischer did was concentrated on the Cormier case, and I think thought that we were solely saying that because they had possession of the records, that was, it raised itself to the level of an expectation of privacy. But we were arguing the alternative. I indicated that in my brief. It's never been answered by the city in both cases. So even... What seizure is involved here? The seizure of motel records, and that's clearly allowed under the ordinance, and it in fact happened in the second motel case. And I might add that if in fact one gets to the issue and says that there is an expectation of privacy, but even if there isn't, there's still protected under the seizure clause of the Fourth Amendment, no doctrine, I know of no doctrine, and I think this circuit's case law is very clear, and I pointed out in the brief and I did in my FRAP 28-J letter under the U.S. v. King K. case that says that law enforcement falls within the special needs exception. Let me take you back to the point you made. I mean, I'm starting with the Los Angeles case, which is the facial challenge. Correct. And the ordinance makes reference to you've got to keep the hotel records and maintain them, and they shall be made available to any LAPD officer for inspection. Correct. Does inspection inherently entail seizure? Yes, and that was a stipulated fact that Judge Fischer found, and that we stipulated in our pretrial conference order, that in fact the definition parameters of the ordinance were that it would allow or it is being enforced and does allow pursuant to the ordinance search and seizure. And so that is, and if Your Honor wants, I can point that out. So looking at the records, not necessarily taking them anyplace else, just looking at the records constitutes seizure? Well, I think the definition of seizure in the Soudal case, and the case that Soudal cites is a case called Jacobs University of the United States, is that seizure implies an interference with meaningful possession of property. And in fact that's why. That's really what I'm getting at, because the point of the ordinance is that they're supposed to do it in a way that doesn't interfere with the motel business' use of the records. No, I don't think that's, and once again I respectfully disagree, but I don't think that's what the ordinance says. And what the ordinance says is that they're not supposed to interfere with the operation. They should try as much as possible not to come on in hours that would somehow interfere with the operation of the property. So in other words, we had a dispute originally when you filed suit. There was a question whether they should be coming on 2, 3 o'clock in the morning. There were a lot of motel owners who were complaining that there were police who were coming in and inspecting at 3 in the morning. And even if the motel is open 24 hours a day, it's certainly not a good feeling to have a police officer knock on your door and say I want to look at your records at 3 in the morning. So the ordinance was then amended, and it was amended to allow, it wasn't obligatory, but the ordinance says that as much as possible he should not interfere with the operation. But it certainly doesn't say that they cannot seize it. In fact, we have a stipulated fact that they can, they are, and they have. But I'm dealing with a facial challenge, and I'm looking at the ordinance, and what in the ordinance talks about carrying the records away? But the definition of the ordinance in a facial challenge, and there's a case, I have not cited it, but I certainly could file a second FRAP 28-J letter, Graynard versus Rock something, it's a First Amendment case, but the U.S. Supreme Court has clearly said that even in a facial challenge, and certainly in a First Amendment facial challenge, the definition of what the ordinance means is determined by state law. And so if we have a stipulation and a finding of facts by the district court judge, that this is what the ordinance means, and it means under the stipulated facts, that it is, has been enforced, can be enforced, and for search and seizure without warrant or consent, then that is a part of the definition of the ordinance. That is clearly what the ordinance then entails. So I don't think we, once again respectfully, I don't think we have a problem in that respect. With that I would rest, I just would like to say on the Patel versus City of Long Beach case, I would add one point, and that is on the reply, or the answering brief by the city about the writ of mandate, I did not file a reply brief because I was quite ill last year, I had toxic megacolon, and so I did not get a chance to file it. But the district court judge Collins dismissed the writ of mandate without prejudice. She had originally denied a judgment on the pleadings to dismiss the writ, found she had jurisdiction, and then when she granted summary judgment, dismissed it without prejudice and said you can go to state court. Their argument is that it's an unreviewed writ, or it's an unreviewed findings, administrative findings under the Miller case, that would somehow preclude or be some kind of a bar, but that's if you never filed writ. We filed the writ, we filed it in federal court under 28 U.S.C. 1367. The court accepted jurisdiction, and not only accepted jurisdiction, initially denied the judgment on the pleadings. So even if the court, I would argue, would find that summary judgment was well taken, certainly Judge Collins' order dismissing without prejudice, I believe, should be upheld. Thank you. Thank you. Good morning, Your Honor. May it please the court, Tom Leong, Deputy City Attorney on behalf of the defendant, City of Los Angeles. The inspection of motel registration cards does not rise to the level of Fourth Amendment protection. In balancing the intrusion on the individual's Fourth Amendment interest against the government's interest, plaintiffs do not object to the maintenance of the registration cards. Can I ask you a question? Yes, Your Honor. What's so hard about complying with the Fourth Amendment? There's nothing hard about complying with the Fourth Amendment, Your Honor. It's easy. Correct. Yeah. So why not respect the Fourth Amendment and just comply with it? And then we don't have to have these cases. Well, we do comply with the Fourth Amendment, Your Honor. If I may give an example of this, this is a facial challenge, and there's no... I mean, you comply with the Fourth Amendment. If the officer's got probable cause to suspect there's criminal activity going on in a place, he just fills out an affidavit, and the city attorney's office does that, then you get a search warrant. Or if there are exigent circumstances that excuse getting a warrant, something's going on right then and there, well, you have that exception. And it's always you can get a search warrant telephonically, too. So why not do it that way? Correct, Your Honor. Those are circumstances which would support that this ordinance is valid. Plaintiffs have not shown that there's under no circumstances that this ordinance would not be valid. And as Your Honor has indicated, if a police officer is standing at the sidewalk, and 10 feet away is the check-in window, and there's a guest that comes in, says, I want a room, here's $20. The guy behind the counter says, here's your key, and the guy goes to his room. There's a situation where the officer can go up to the motel clerk or the owner behind the counter and say, may I see your registration cards? And this is one of the circumstances which would make this ordinance valid, and plaintiffs do not suggest otherwise. And they have not established their hypothesis. On what basis would the officer have to demand identification if somebody is checking into a motel? Well, that would be this ordinance. That requires that the motel owner or the clerk behind the counter maintain a register, which includes the name, the vehicle, if the person drove in in a vehicle, how many guests there are, the amount charged for the room, the room number, all those things. Absent the ordinance, what would the officer have to do to get that information? Just to see the inspection, ask voluntarily if the individual would. If they said no. If there's other criminal activity going on. But absent that. We're going to have to be communicating. What would the officer, no ordinance, what would the officer have to do to be able to obtain that information if it's not voluntarily given? We believe that the information contained there doesn't even rise to the level of any expectation of privacy. This court has indicated that a motel... You're going to have to answer the question. Right. I don't think the officer would have to do a whole lot. Can he reach over and grab the registration card? If it's available there, I think he can ask and he can inspect it. And he's told no. I think under his police power he can if he believes that there are some investigative information that may assist him. Perhaps if he sees the person checking in may have been a known drug dealer or a murderer or whatever or not. And he's not sure but he wants to see the name that's on that registration card to show who just checked in. And I think there are circumstances where the officer can go in there and inspect these records. Because there is no expectation of privacy on the part of the motel owner. This court has indicated that the guests do not have it. And the distinction that is here as opposed to the case in Dela Cruz versus Quackenbush is in that case those records were private. And the court indicated there that just because you have a statute that says you can inspect it turns that private information into non-private. Here we have a situation that the information is not private. And plaintiffs have not cited any case that says that a non-private piece of information becomes private as in the case of Quackenbush. Can you go up to Parsons is located here in Pasadena. Can you go over to Parsons and say I'd like to have a list of your customers please. Well I think there are other issues if the customers could involve trade secrets or other things of that nature. Just a customer list. No secrets, just a customer list. Are you entitled to require any merchant to give you a list of the merchant's customers? Well in terms of a business, in terms of getting a customer list and whatever they're doing, I mean whatever area they're targeting may be their business practice and may be some business secret that they do have. And I think that is slightly different from our situation here where we're just asking for a list of their customers. Well these are customers that potentially may be felons. Parsons may have some customers that are felons too. And that may be so. Checking into a motel room is not in itself inherently a criminal act. That is correct. So why is this not confidential information in the same way that customer lists are confidential? Names, the cases that we cited, names are not something that's held to be private. So we exchange our names on a daily basis with all the transactions that we do. What is a police officer required to have in order to be able to demand identification from a citizen? Is there any requirement or restriction? That I do not know, Your Honor, in terms of approaching someone and asking for their identification. Usually there's like a Terry stop, for example, would require at least reasonable suspicion. It wouldn't rise to the level of probable cause. But an officer would not ordinarily be able to pick out citizens at random and say, I want your ID, would he? But in that circumstance, it's asking for the individual's information. And this court has already indicated that that information that's in that registration card, there's no expectation of privacy, even from the individual who gave that information. Now, the person who, the motel owner, certainly doesn't have any expectation of privacy in someone else's name, the car they drove in, how much they paid. But isn't, I mean, each, you know, the officer's there because they suspect there's some drug dealing maybe going on, prostitution, other bad things. And the people that own the motel or hotel, they certainly are aware of what's going on. And why wouldn't the motel people want to keep that confidential? Because it's information that can be used to implicate them in a conspiracy to commit an offense. The information that we have, Your Honor, is that the motels do not want that activity to take place on their property. On their motel registration cards, they plainly tell the guests that prostitution and illegal drug use is not allowed here. So they share the government's interest. Well, then if that's true, why do they take the $20 and let the guy go? At the end of the day, $20 is better than not having $20. But also on the same token, they don't want their whole facility to be infested with drug and prostitution. Well, if they have the same interest then, wouldn't you expect them to respond yes to the request by the police officer to look at information? Why do we need the ordinance? Well, the ordinance is there to tell them that this is the information you need to put down. You need to put down the name, vehicle, and things of that nature on there. Well, I don't know that the challenge is to the requirement that the information be kept and maintained. I don't see a Fourth Amendment challenge to that. The challenge comes with the ability to inspect without any showing of reasonable suspicion, probable cause of anything. Just the ability to go up and inspect and presumably seize the records at any time. Well, once again, then we go back to whether there's an expectation of privacy in that. And we believe that there isn't. And whether society is willing to protect such an interest, we don't believe, as the court below indicated, that it doesn't rise to the level of Fourth Amendment interest, even if there's an ownership or possessory. And also in the Soldow versus Cook County case that plaintiffs have referred to in footnote 7, the Supreme Court indicates that in holding that the Fourth Amendment's reach extensive property as such, we are mindful that the amendment does not protect possessor interest in all kinds of property. And we believe this is one of those kinds of properties. In regards, if I may lastly touch on the issue of the Berger analysis, the motel registration. I mean, the motel industry, we believe, is a heavily regulated industry. In the city's first trial. You think that the judge who found it was not heavily regulated made it an abused discussion? No, what I'm indicating is that I made a mistake below in that the first trial brief, I cited the ordinances that are subject to motels. And in the second trial brief, I did not. And that was an error on my part. And I cited that again for this court in the opposition. So it was raised below, although in the first trial brief. So unless the court has any further questions on me, we would respectfully request that the judgment below be affirmed. Thank you, sir. You want to hear from him? He's a lawyer for Long Beach. Got to merge the two cases. Oh, Long Beach. Okay. Beautiful city, Long Beach. Thank you very much, Justice Ferguson. We're just judges, I'm afraid. No justices here. If it pleases the court, my name is Crystal Myers, and I'm a deputy city attorney with the city of Long Beach representing the appellee in the matter of Patel versus the city of Long Beach. The actual scenario in the city's case is distinct for purposes of the regulatory ordinance regarding hotel records than the previous case that was discussed. In the case before you now, this is not a facial challenge to Long Beach Municipal Code Chapter 5.87. Rather, this is an as-applied challenge regarding the registration records. Moreover, the factual circumstances surrounding this as-applied challenge are also significantly unique. The appellee in this instance conducted a series of administrative hearings starting back as far as 2003 regarding the appellant's business operation entitled The Princess Inn. The final administrative action took place in 2008, a three-day administrative hearing, 11 witnesses, 38 exhibits. During that hearing, and this was to revoke the business license of the appellant, Jayanta by Patel, there was evidence presented that the city of Long Beach actually utilized undercover vice detectives repeatedly to go in and attempt to rent a room, which would be in violation of the ordinance, meaning for an hour, and then re-rent that same room within a 12-hour period. And that was conducted. At the conclusion of this particular hearing, the recommendation by the hearing officer was to revoke the business license. The matter went to the appellee's city council in April of 2008, and the business license was in fact revoked. When city staff went to the location requesting, not demanding, but requesting to see the actual registration records, this was subsequent to the period in time where they were to have absolutely no business operations because they had no business license. Unlike the predecessor case or the companion case, the proprietor didn't have a photocopier available and actually consented and gave records to city staff that were not just police officers, but were also representatives from the Department of Financial Management. So there was no seizure. This was consensual in nature. But to step back behind that, certainly in this instance the city had reasonable suspicion and certainly probable cause that a business was being operated because they had no business license. Similar, however, to the predecessor case, the district court did find that there was no reasonable expectation of privacy with respect to those registration cards, citing, again, the case of United States v. Cormier and United States v. Miller, and that is the case wherein the motel guests do not have a reasonable expectation of privacy in the records maintained by the hotels. Because this particular matter is not a facial challenge, it's incumbent to view the very first section of this ordinance that even coincided, 5.87010, and it begins that every single hotel and motel within the city of Long Beach shall be regulated pursuant to 5.87. By the plain language of the statute, this is a heavily regulated industry within the city of Long Beach. Well, I'm not sure that really answers the question because any city could pass an ordinance that declares anybody is regulated. Maybe you pass an ordinance saying all criminals are required to maintain and make available to the police department records of their criminal activity. Does that mean the Fourth Amendment gets swept out and you can go to anybody's house and break in and take whatever evidence you can find and say, well, this must be the record he's maintained for our purposes? Certainly not, Justice Clifton. However, 5.87 is rationally related to a legitimate government interest, and that interest is in fact public safety. Well, see, that doesn't answer the question because exactly the same thing could be said about my ordinance. It would be rationally related to public safety to require criminals to maintain records and to make them available. But the basis for this particular ordinance is actually multifold. It is not just to ensure compliance so that there could potentially be the consequence of a criminal action. Rather, this is to ensure that the operations are conducted appropriately, yes, which could possibly have the consequence of criminal actions, but two, to assure that transient occupancy tax is appropriately paid to the City of Long Beach. Transient occupancy tax is based upon those records. In fact, there is a companion Long Beach Municipal Code 3.64 which has the same requirements for the registration cards as under 5.87. Hotels by their very nature are to operate as transient type of occupancy. They are not to be used as a substitute for apartments. That is another basis by which the city has an interest which does not lend itself on its face to criminal consequences. You mean a person can't, say, lease a motel room for six months? Yes, but with caveats. Justice Prager said the zoning, this then begins to bring in the concept of land use and planning and zoning ordinances, commercial versus residential versus mixed corridor uses. For purposes of hotels and motels, their primary commercial use must be transient in nature, less than 30 consecutive days. In the event that there is an individual who is interested in remaining at the hotel and motel in excess of the 30 days, they are required to enter into a written agreement prior to that stay. Again, I think this misses the point. This explains why it's good for the community to have zoning ordinances and limit the use or regulate the use of land. Well, it's good for the community to have laws against burglary and robbery and murder too, but that doesn't mean that the Fourth Amendment doesn't apply with regard to a potential in maintaining private information. Okay, the motel may be skirting the law with regard to the land use requirements, but that doesn't mean automatically it has no right to maintain the privacy of the records that could be used to help convict it for a violation. And Justice Clifton, going back to the predecessor case, this is the very same issue, whether or not there is that fundamental, reasonable expectation of privacy in those records that are maintained. There is an interesting case... And why isn't there? Your position is that there is no reasonable expectation of privacy. No reasonable expectation of privacy. That's the problem. Why isn't there? Why isn't this like a customer list? This is a regulated industry wherein the hotelier, the operator, is provided with full disclosure up front as to the requirements to operate a motel within the city of Long Beach. Moreover, the state tax requirements are not unique to the city of Long Beach, but are taken from state law. Could the city of Long Beach condition on the issuance of any kind of business license an agreement to permit Long Beach Police Department inspectors or building inspectors or any other inspector from the city to enter the premises at any time for purposes of reviewing compliance with local ordinances and state laws? Yes, of course, there would be. Certainly zoning and health and safety. Could the city of Long Beach condition the issuance of a business license? Could the state of California qualify and as a condition to issue a business license require the business in question to acquiesce to a requirement that city or state inspectors be allowed to enter at any time? No, that would be counterintuitive to the reasonable component of 5.87. So what makes this requirement reasonable? In this particular instance, if the court is to accept the rationale in the United States v. Cormier and United States v. Miller cases that the occupants and guests don't have a reasonable expectation in their very own information. What's the rationale for that decision and how does that apply to the operator of the motel? The operator in this particular or in any hotel, not the Princess Inn, but in any hotel within the city of Long Beach and likewise the city of Los Angeles is to operate an establishment. Let me break this down. What was the rationale behind our court's decision in U.S. v. Cormier? For purposes of the guests themselves that they are not going to be subject to the regulated actions. The decision was that the guests do not have a reasonable expectation of privacy. Why? What was the justification or explanation for our court for that decision? The information was provided voluntarily to the hotel operator. So it was not kept private. Now how can you apply that rationale to the motel owner? The motel owner has not provided information to anybody. The analogy used in Cormier was banks and bank records. You're a depositor. You've given information to the bank about your account. So a depositor, a bank customer doesn't have a reasonable expectation of privacy within the bank's records. But that doesn't mean that I can march into Bank of America here in Pasadena and say you bank, you don't have any reasonable expectation of privacy. Or does it? Maybe it does. Can I do that? One would have to then go through the analyses as to whether or not this is a highly regulated type activity under Berger. Well, it is. The bank is a highly regulated activity. Yes. And if people knew that the... I mean, if you have a bank account, you know that other people, employees of the bank, are probably going to have access to the account to see what you have and what you don't have. But if banks could turn around and someone comes in and says, well, you're a highly regulated activity and I'm a police officer and I want to see so-and-so's account, you're saying that the bank then has to just make all that available? No. Just as Prager said, the access to these records are limited. There's no one who's called a justice on the Ninth Circuit. Pardon me? And as old Walter Ely would say, there's no justice on the Ninth Circuit. That's been good for a laugh for the past 40 years. And we try to live up to it, too. We try to live up to it. But to answer your question, it's not for all purposes. In fact, in the case of United States v. Welliver, in that particular instance, there were financial records that were turned over but for the limited purpose of investigation, audit, and examination. Not to identify personal records of bank account holders but to comply with the regulatory action. Was there a warrant issued in that case? Pardon me? Was there a search warrant issued in that case? No, there was not. Well, then let's change our bank. The bottom line with these ordinances has to, one, address the issue as to whether or not it's highly regulated. And it may be in that the predecessor case, those facts just were not presented to the court. Why not have... Long Beach is a very civilized place. And why not have... If an officer's got reasonable suspicion, then they come in to your office and you help them. It didn't take very long. And you get an application for a search warrant. You fill out the forms. And you have a judge who's on duty. And you just go over there and get the warrant issued. This was easy. Pardon me, Your Honor. Under 5.87... Forget about 5.87. What about the Fourth Amendment? Under these facts and circumstances, because... I'm just asking you a simple question. What is so hard about getting a search warrant? For a peace officer, for purposes of a search, it is not difficult. It's not difficult. The application, the affidavit... Have you ever had a judge turn down an application for a search warrant? No. And do you use telephonic search warrants? You can do that. So it's easy to get a search warrant. And by doing that, you are showing that you respect the Constitution of the United States. You see? And this ordinance contemplates that because the request is made not just of a peace officer for these records, but of a non-sworn peace officer city employee. Now, if those records are refused, at that point, the city would have to obtain either an administrative search warrant, or... What you're saying is they'd walk up and say, may I see these records? And the people give it to them. Right? Yes. They don't have any trouble, so why get a search warrant? If you ask, you receive. And failure to... failure to voluntarily disclose that information to an authorized city representative... You mean failure to consent. Failure to consent could, in fact, jeopardize the business license, but there have been no... We'd already been yanked for these people, hadn't we? Respectfully, no. There has been no instance in the city of Long Beach where those records have been seized without... I wouldn't even say seized in consent, because they don't go together. No one's ever denied, city officials, no motel owner or hotel owner has ever denied. Refused? Refused, yeah. Yes. Failed to consent, yes. That has happened. The police officer comes in and says, may I see these records? And the person there says, yeah, okay. And so it's never been denied. So there's no great burden if someone says, I don't want to give them to you, go get a search warrant. There's no problem then getting a search warrant and getting the same information. I mean, it's just easy to do. Agreed. And that, again, is contemplated in the ordinance. And in the event that there is litigation for failure to consent, noncompliance, then there are civil remedies that for purposes of recouping costs if there are any incurred by the city of Long Beach. However, under the facts before... So if the person that owns the motel says, well, yeah, I see the ordinance, but I'd feel much more comfortable if you go ahead and get a warrant. And so you get it. The police officer can phone you up and you can have it typed up and then he signs it and then you go to the judge and you've never been denied a search warrant. So it takes maybe a half hour or so. And then he goes and serves the warrant and gets the records. So then you penalize him for that, is that what you're saying? Not under 5.87. But it could be a consequence to the business license, absolutely. It could be. Yes. Well, that's what I said. So you say, well, you're exercising your Fourth Amendment rights and you will be punished. And, of course, the appellee's position is that these records do not rise to the level of Fourth Amendment protection. I see that my time has long expired. That's interesting. If there are no further questions or if the other issues to which the city's appeal is before you, I'll conclude. Thank you. Do you have any rebuttal? You know, when you first got up there, you looked familiar. You looked a little bit like Eddie Cantor. You remember that? Everybody tells me that, Your Honor. Do they? At least some people tell me that. Yeah, no, I don't know. A younger Eddie Cantor. I don't know about that, Your Honor. No, no, no, it's okay. I'll try to be brief, Your Honor. People tell me I look like Harrison Ford. I like that, you know. Those are mostly attorneys during argument that tell on that. In the second case, the Batelverse City of Long Beach case, I was the attorney at the administrative level and it was a well-litigated case at the administrative level. And as I indicated in my brief, there was an issue originally that preceded it with transit oxy tax issues, and then it led into the nuisance issues, the nuisance abatement issues, and Mr. Patel, Mrs. Patel, his wife, claimed that they had never had any enforcement at the motel for years, and now all of a sudden, after the transit oxy tax issues, which hadn't been resolved, then the nuisance abatement issue came. Regardless of whether that's correct or not, and those are issues of fact, not before the court. It's hard to beat city hall. The interesting point about this case, which I think demonstrates what you indicated, Your Honor, Judge Fragerson said, about the potential for the motel owner to be prosecuted, was after the abatement, the license revocation, a couple of days later, or a day later, a couple of days later, they came down to the motel and it was police officers and city officials and asked to see the records for the purpose of seeing of whether Mr. Patel was now operating without a business license, because his license had been revoked. They called me, the clients don't speak English well, and it's in our excerpt of the record, and I believe it's at page 88, paragraph 39, and then 89, paragraph 40, and I spoke to somebody over the phone from the city and told them, just that, get a warrant. We're not going to give you the records, because obviously I was not going to let the client be potentially exposed to prosecution. Lo and behold, they took the records and Mr. Patel then was prosecuted for operating without a license. So I think that demonstrates, in this case, and as an applied challenge, that there can be, clearly, something over and above just the content of what's there that has to be kept normally of how it can affect the motel owner. With respect to the argument as to a closely regulated business, the Brock case specifically says that just because the government requires you to keep records doesn't make it a closely regulated business, and that was an argument that was raised also in the Dela Cruz case. That doesn't create the closely regulated business. But what do you say to the argument that if the government requires you to keep the records, you have no reasonable expectation of privacy in the records? Well, once again, in the... I mean, wasn't that the basis for the Massachusetts case, which only got two votes on substantial federal question, which was the Fourth Amendment? Some courts have said that, and I agree that there are courts, as I said... Also the Fourth Circuit. Absolutely, there are courts. The Fourth Circuit does hold that, but other courts say not. And once again, even Judge Fisher found, and I believe it's in page 82 of the record, in her finding the conclusions of law, that these are business records. And what the Dela Cruz case said and the Brock case said is that if they are business records, there are other uses for them, and even if the government requires you to keep it, you do have some expectation of privacy. Now, my argument goes further. My argument says that in all those cases, we weren't dealing with law enforcement. And if it is law enforcement, then you don't have this diminished expectation of privacy. If it is non-law enforcement and it meets the Berger requirements, then yes, even the motel owner cannot say absolutely that go out necessarily under probable cause, because the Berger requirements say that it's a lessened expectation of privacy, but it's still some expectation of privacy. It's not totally eviscerated. The problem here is, is we have law enforcement on the face of both ordinances, and in fact, in the Patel versus City of Long Beach, it was the police who seized the residence. There's no administrative purpose. What about the tax? Even if you have a closely regulated business, this circuit has said over and over again, and then recently in the U.S. Lee Kincaid case, and that emanates from clear Supreme Court authority that the special needs doctrine, which is the basis of the Berger test,  Isn't collection of the transient tax a special needs issue? Pardon me? Isn't collection of the transient tax a special needs situation? It's not law enforcement. It may very well be. It may very well be. I don't know. We didn't brief that, but certainly it may be, but that was not reached. That issue was certainly not brought up at the district court level, and Can we not consider it here? And Judge Collins found, never even came to that issue. She just thought there was no reasonable expectation of privacy, period. Well, that's really what society thinks ought to be protected. So it's all a very, you know, you could put out a notice in the world to everyone to say, well, we're going to tap all your wires, all your phones, so you don't have any reasonable expectation of privacy, because we're telling you that this is what we're going to do. So it's whether society wants to go along with that. That's what it all is. Like they said, don't do anything that you wouldn't want to see appear on the front page of the New York Times tomorrow morning. You follow that, don't you? Thank you very much, Your Honor. If there are any other questions. We're going to take a recess. Thank you.
judges: Pregerson, Clifton, Bea